IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Joseph Toner | : | |
| | : | |
| v. | : | |
| | : | |
| Detective James Severa, | : | No. 972 C.D. 2024 |
| Appellant | : | Argued: October 9, 2025 |

OPINION NOT REPORTED

MEMORANDUM OPINION
PER CURIAM                                             FILED: November 18, 2025

Philadelphia Police Detective James Severa (Appellant) appeals from the Philadelphia County Common Pleas Court's (trial court) June 21, 2024 Judgment on the Verdict in favor of Joseph Toner (Appellee) and against Appellant in the amount of $400,000.00. Appellant presents two issues for this Court's review: (1) whether Appellant was entitled to judgment as a matter of law on Appellee's malicious prosecution claim against him; and (2) whether the jury's award of $400,000.00 in Appellee's favor on his malicious prosecution claim is excessive, meriting a new trial or remittitur of damages. After review, this Court reverses.

**Background**

On August 28, 2016, at approximately 2:00 a.m., Appellee was involved in an altercation at Steve's Steaks, located at 2751 Comly Road in Philadelphia, Pennsylvania, and the immediate vicinity. After attending a party at the Union Tap Bar located nearby, Appellee and several of his friends, including A.G., a subsequent gunshot victim, travelled to Steve's Steaks. D.B.[1] had an exchange with one of the group's female companions while they were sharing a table

---

[1] D.B. is the complainant in the instant matter.

outside Steve's Steaks. The exchange became heated, with the female companion calling D.B. a "*racist dick*." Original Record at 250.[2] They were joined by E.T., the female companion's boyfriend. E.T. confronted D.B. but backed away before a physical altercation ensued. E.T. and the female companion entered Steve's Steaks and D.B. departed the parking lot on his motorcycle.

D.B. was on his motorcycle at a stop light when a group exited Steve's Steaks and pointed him out. D.B. returned to the parking lot, where he was assaulted by the group, hitting him multiple times and kicking him. Altogether, there were three confrontations and physical assaults. During the second of these assaults, D.B. pulled out a gun and ultimately shot one of the members of the group, A.G. Thereafter, Appellee assaulted D.B., continuously pounding him until the police arrived. At some point, Appellee picked up D.B.'s discarded gun and cocked it, before tossing it to the side.

The Philadelphia Police Department commenced an investigation. The investigators retrieved video surveillance (Video) from Steve's Steaks and Planned Parenthood 2 which were located in the immediate area (Video) of the assaults. The Video revealed Appellee's interaction with D.B., showing Appellee viciously beating D.B., picking up D.B.'s gun, cocking the gun, and moving toward D.B. with the gun. Appellant interviewed Appellee the morning of the incident, and, after Appellant advised Appellee that he was not in custody and could stop the interview at any time, Appellee stated, in relevant part:

> [D.B.] started to waive a gun around with a green laser on it. That pissed me off - the[] guy[']s motorcycle was laying on the ground - I knew it was his because he kept yelling over for everyone to get away from his bike. **I don't know why I did it I guess because I was pissed off about him pulling a gun out but I tried to rip his license**

---

[2] Because the original record pages are not numbered, this Court references electronic pagination herein.

**plate off**. There were two guys that I guess were his friends they were saying that the gun wasn't real - and that they just wanted to leave. They were in a black hatchback with [New J]ersey plates on it - I walked over and told them it wasn't cool and to just get their boy out of here. A couple of other people were trying to break it up. Then they both [A.G.] and the guy move from out of the street and go behind the black hatchback. They had walked around the back and I walked around the front and that fast - there were no punches thrown or anything it was pop and [D.B.] shot [A.G.] and he went down like a sack of potatoes. . . . [A.G.] went down and the guy ended up by the steps of the building. **I don't know why but I picked the gun up and then threw the gun back down by the bottom of the steps[,] I was upset about [A.G.] being shot and lost it and I started to punch the guy that shot him as hard and as fast as I could until the police got there**. They got there pretty fast.

Reproduced Record (R.R.) at 138a (emphasis added). The investigation also revealed that following the altercation, D.B. was hospitalized for several days in Aria Torresdale Hospital's intensive care unit (I.C.U.). D.B. suffered a broken right hand, several facial fractures, and a lacerated liver.

Following the investigation, Appellee was charged with: (1) "attempt[ing] to cause serious bodily injury to another, or caus[ing] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[-]"[3] aggravated assault, felony of the first degree; (2) "agree[ing] with [] [an]other person or persons that they or one or more of them will engage in conduct which constitutes such crime or [] attempt[ing] or solicit[ing] to commit such crime; or [] agree[ing] to aid such other person or persons in the planning or commission of such crime or of [] attempt[ing] or solicit[ing] to commit such crime[-]"[4] criminal conspiracy; (3) "carry[ing] a firearm . . . at any time

___

[3] Section 2702(a)(1) of the Crimes Code, 18 Pa.C.S. § 2702(a)(1).
[4] Section 903(a) of the Crimes Code, 18 Pa.C.S. § 903(a).

upon the public streets or upon any public property in a city of the first class[-]"[5] violation of the Pennsylvania Uniform Firearms Act of 1995; (4) "possess[ing] any instrument of crime with intent to employ it criminally[-]"[6] possessing an instrument of crime, misdemeanor of the first degree; (5) "attempt[ing] to cause or intentionally, knowingly or recklessly caus[ing] bodily injury to another[-]" simple assault;[7] (6) "intentionally damag[ing] real or personal property of another[,]"[8] "intentionally caus[ing] pecuniary loss in excess of $1,000[.00-]"[9] criminal mischief, misdemeanor of the second degree; and (7) "recklessly engag[ing] in conduct which places or may place another person in danger of death or serious bodily injury[-]"[10] recklessly endangering another person. The Video shows Appellee committing all of the above offenses. On December 10, 2018, Appellee was found not guilty by reason of defense of others at a waiver trial before the Philadelphia County Common Pleas Criminal Court.

## Facts

On October 30, 2020, Appellee filed a Complaint and Jury Demand - Civil Action against Appellant, Detective Matthew Burkhimer (Detective Burkhimer), Detective Kearney, Detective Roth,[11] and Detective Denise Murray (Detective Murray) (collectively, Defendants). Appellee averred that Defendants initiated and perpetrated a fraudulent malicious prosecution against him. Appellee

---

[5] Section 6108 of the Pennsylvania Uniform Firearms Act of 1995, 18 Pa.C.S. § 6108.

[6] Section 907(a) of the Crimes Code, 18 Pa.C.S. § 907(a).

[7] Section 2701(a)(1) of the Crimes Code, 18 Pa.C.S. § 2701(a)(1). This crime was charged as a misdemeanor of the first degree; however, by definition, it should have been charged as a misdemeanor of the second degree. The fact that the grading was incorrect does not impact the result herein.

[8] Section 3304(a)(5) of the Crimes Code, 18 Pa.C.S. § 3304(a)(5).

[9] Section 3304(b) of the Crimes Code, 18 Pa.C.S. § 3304(b).

[10] Section 2705 of the Crimes Code, 18 Pa.C.S. § 2705.

[11] Detectives Kearney's and Roth's first names do not appear in the record.

further asserted that Defendants issued a false Affidavit of Probable Cause and other false police paperwork that led to Appellee's arrest and prosecution. Appellee claimed that Defendants acted outrageously, wantonly, willfully, maliciously, in a manner shocking to the conscience, and totally without justification causing Appellee to suffer pain and suffering, emotional distress, economic damages, and mental anguish. *See* Complaint ¶¶ 21-26.

On December 3, 2020, Detectives Burkhimer and Murray filed an Answer to Appellee's Complaint with New Matter. Appellee filed a Reply to New Matter on December 7, 2020. On June 2, 2022, Appellant filed an Answer to Appellee's Complaint with New Matter. Defendants filed a Motion for Summary Judgment on October 3, 2022, requesting that the trial court dismiss Appellee's claims against them. On November 2, 2022, Appellee filed a Response to Defendants' Motion for Summary Judgment. By November 15, 2022 order (entered on November 16, 2022), the trial court denied Defendants' Motion for Summary Judgment. On December 14, 2022, Defendants filed a Motion for Reconsideration or an Application for an Amended Interlocutory Order to Set Forth Expressly the Statements Specified in Section 702(b) of the Judicial Code,[12] and to Stay Further Proceedings Pending Resolution of their Request to Appeal the Interlocutory Order (Motion for Reconsideration). By December 14, 2022 order (entered on December 20, 2022), the trial court denied the Motion for Reconsideration.

The trial court held a jury trial beginning on August 28, 2023. On August 29, 2023, after Appellee rested his case-in-chief, Defendants made an oral motion for compulsory nonsuit or directed verdict (motion).[13] *See* R.R. at 92a.

---

[12] 42 Pa.C.S. § 702(b) (relating to interlocutory appeals by permission).

[13] The proper motion at the close of a plaintiff's case-in-chief is a compulsory nonsuit, not a directed verdict. *See* Pennsylvania Rule of Civil Procedure 230.1, Pa.R.Civ.P. 230.1. This Court's review of the transcript reveals that Appellant did not request a directed verdict after Appellee rested his case or after the jury returned its verdict.

Appellee agreed to the motion relative to Detectives Kearney and Roth. *See* R.R. at 93a. The trial court granted the motion with respect to Detectives Burkhimer, *see id.*, and Murray, *see* R.R. at 94a,[14] and denied the motion as to Appellant.[15] *See* R.R. at 95a. On August 30, 2023, following a three-day trial, the jury was presented with two questions: (1) do you find that there was probable cause to initiate proceedings against Appellee in the criminal matter; and (2) do you find that there was willful misconduct by Appellant? The jury responded: "No" to Question 1 and "Yes" to Question 2. Verdict Sheet, 8/30/2024. The jury awarded Appellee $150,000.00 in compensatory damages and $250,000.00 in punitive damages for a total of $400,000.00.

On September 11, 2023, in accordance with Pennsylvania Rule of Civil Procedure 227.1, Pa.R.Civ.P. 227.1, Appellant filed a motion for post- trial relief (Post-Trial Motion). Appellant asked the trial court to enter judgment in favor of

---

[14] With respect to Detective Burkhimer, the trial court ruled:

> [Appellee] indicated that [Detective Burkhimer] took a series of interviews as to this immediate matter on the incident that happened on August 28, 2016[,] -- I think that was the date – and that as a result, that it culminated in a false narrative and flawed affidavit [of probable cause]. I listened very closely to the testimony that went forth [sic] in [Appellant's] case in chief. I do not believe that [Appellee] ha[s] met [his] burden of proof . . . .

R.R. at 93a. Relative to Detective Murray, the trial court determined: "[W]ith everything that was said in [Appellee's] case in chief, very minimally, very peripherally did I hear anything about Detective Murray. . . . I don't believe that [Appellee] ha[s] met [his] burden of proof as to Detective Murray . . . ." R.R. at 94a.

[15] The trial court stated:

> I would not grant a motion for nonsuit or directed verdict as to [Appellant], in part, because he was, like, the lead investigator or the detective that actually issued the affidavit of probable cause. I do think there might be some genuine issue of material fact to be addressed by the trier of fact, which is the jury. So I'm going to allow that portion of the case to go forward.

R.R. at 95a.

6

Appellant notwithstanding the jury's verdict (Judgment NOV). In the Post-Trial Motion, Appellant alleged that the trial court erred by denying his Motion for Compulsory Nonsuit or Directed Verdict in his favor on Appellee's Malicious Prosecution claim. On August 21, 2023, Appellee filed a Response to the Post-Trial Motion.

On September 13, 2023, the trial court granted Judgment NOV in favor of Appellant. On September 22, 2023, Appellee filed a notice of appeal to this Court. On September 22, 2023, the trial court directed Appellee to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement). Appellee filed his Rule 1925(b) Statement on October 13, 2023.

On November 29, 2023, the trial court filed its opinion pursuant to Rule 1925(a) (Rule 1925(a) Opinion), informing this Court that, upon review of the record, the trial court recognized that it committed a substantive error in granting the Post-Trial Motion. Contrary to the trial court's intent, the order read that it granted Appellant's Post-Trial Motion rather than denied. The trial court requested, should Appellee file an application with this Court to remand the appeal to the trial court that it be granted, so the trial court would have the opportunity to correct the error. On April 18, 2024, this Court remanded the case to the trial court and relinquished jurisdiction.

On June 21, 2024, Appellee filed a Praecipe to Enter Judgment in favor of Appellee and against Appellant. The trial court entered Judgment that same date. On July 19, 2024, Appellant appealed from the June 21, 2024 Judgment to this Court.[16] Pursuant to Rule 1925(b), the trial court ordered Appellant to file a Rule

---

[16] This Court's "review from a trial court's order denying a motion for [Judgment NOV] is limited to determining whether the trial court abused its discretion or erred as a matter of law." *Young v. City of Scranton*, 291 A.3d 1245, 1249 n.7 (Pa. Cmwlth. 2023) (quoting *Alleyne v. Pirrone*, 180 A.3d 524, 539 n.11 (Pa. Cmwlth. 2018) (citation omitted)).

1925(b) Statement, which Appellant filed on August 22, 2024. The trial court filed its Rule 1925(a) Opinion on January 8, 2025.

**Discussion**

Appellant first argues that he was entitled to judgment as a matter of law on Appellee's malicious prosecution claim against him where there was no material dispute of fact surrounding the circumstances giving rise to probable cause for Appellee's criminal prosecution for aggravated assault and related offenses, as the Video showed Appellee, among other things, viciously beating D.B. while he was on the ground and being pummeled by other people. Appellee rejoins that the trial court properly denied Appellant's motion for compulsory nonsuit[17] due to the numerous significant conflicts in the testimony that implicated the issue of probable cause; thus, since material facts were in dispute, it was the jury's responsibility to determine whether Appellant lacked probable cause to initiate criminal proceedings against Appellee. Appellee further retorts that the trial court did not err by denying Appellant's Post-Trial Motion for Judgment NOV where the trial court reviewed the evidence presented during the trial and reasonably determined that there was a genuine dispute of fact regarding whether Appellant had probable cause to initiate criminal proceedings.[18]

Initially,

> [e]ntry of a non[]suit is proper only if the fact-finder, viewing all the evidence in favor of the burdened party,

---

[17] Appellee references a directed verdict; however, as explained *supra* note 4, Appellant moved for compulsory nonsuit after Appellee rested his case, not a directed verdict.

[18] Appellee also argues that Appellant waived any arguments pertaining to the Video as the Video was not included in the original record and it is Appellant's responsibility to make sure the original record is complete. However, the trial court filed a supplemental record on July 30, 2025, consisting of a USB drive containing Appellant's electronically-stored trial exhibits. Accordingly, Appellee's waiver argument is moot.

8

could not reasonably conclude the essential elements of the cause of action were established. A compulsory non[]suit can only be granted in cases where it is clear a cause of action was not established. The trial court must give the non-moving party the benefit of all favorable evidence along with all reasonable factual inferences arising from that evidence, resolving any conflict in the evidence in favor of the non[]moving party. A compulsory non[]suit is valid only in a clear case where the facts and circumstances lead to only one conclusion - the absence of liability.

*Daddona v. Thind*, 891 A.2d 786, 816 (Pa. Cmwlth. 2006) (citations omitted).

This Court has explained:

The elements of malicious prosecution are: (1) the institution of proceedings against the plaintiff without probable cause and with malice[;] and (2) the proceedings were terminated in favor of the plaintiff. *Alleyne v. Pirrone*, 180 A.3d 524, 528 n.3 (Pa. Cmwlth. 2018) (citing *Turano v. Hunt*, 631 A.2d 822, 825 ([Pa. Cmwlth.] 1993)).[19]

> **"Probable cause is a reasonable ground of suspicion supported by circumstances sufficient to warrant that <u>an ordinary prudent person in the same situation could believe a party is guilty of the offense charged</u>."** *La Frankie v. Miklich*, [618 A.2d 1145, 1148 (Pa. Cmwlth. 1992)]. Notably a successful case for malicious prosecution is both rare and arduous. **"Malicious prosecution is an action which runs counter to obvious policies of law in favor of encouraging proceedings against those who are apparently guilty** . . . [.] It never has been

---

[19] "Further, the determination of whether the [police o]fficer[] could be found liable for damages for the intentional tort of malicious prosecution depends on whether their actions constituted willful misconduct under the [the Political Subdivision Tort Claims Act, 43 Pa.C.S. §§ 8541-8564]." *York v. Kanan*, 298 A.3d 533, 542 (Pa. Cmwlth. 2023). Appellant did not raise the issue of whether he committed willful misconduct in his nonsuit argument, his Post-Trial Motion, or his appeal before this Court. Rather, he consistently raised the issue of whether probable cause existed to charge Appellee with the crimes set forth in the Affidavit of Probable Cause.

> regarded with any favor by the courts, and it is hedged with restrictions which make it very difficult to maintain." *Corrigan v. Cent[.] Tax Bureau of [Pa.], Inc.*, 828 A.2d 502, 506 (Pa. Cmwlth. [2003]) (internal quotations omitted) . . . . "If this were not so, it would deter men from approaching the courts of justice for relief." *Id*.

*Alleyne*, 180 A.3d at 540.

*York v. Kanan*, 298 A.3d 533, 542 (Pa. Cmwlth. 2023) (bold and underline emphasis added).

> Lack of probable cause is an indispensable element of the action, and an ultimate adjudication of innocence does not establish lack of probable cause to prosecute. If a defendant can demonstrate probable cause, an absolute defense is established against an action for malicious prosecution, and the [defendant's] motive, malicious or otherwise, is immaterial.

*Corrigan*, 828 A.2d at 550.

Here, in the Affidavit of Probable Cause, Appellant provided, in relevant part:

> On 08-28-2016[,] at approx[imately] []2:17 a[.]m[.] at Steve's Steaks located at 2751 Comly [Road,] Phila[delphia,] P[ennsylvania,] 19154[,] [D.B.] and [two] friends[,] H.T.B. and R.S.[,] were outside sitting along the concrete wall having a conversation after purchasing some food when the offenders who by their own accounts had been at the Union Tap Bar drinking that night left and walked to Steve's Steaks which is in the same building. As [E.T.] and [A.N.R.] walk[ed] pas[t] the group[,] [A.N.R.] [] separate[d] from [E.T.] and s[a]t [] along the concrete wall approx[imately] 10 feet from the group while [E.T.] entered Steve's Steaks. [**E.T.**] **was later met by** [**A.G.,**] [**M.M.,**] [**Appellee,**] [**and G.U.**] **along with** [**three**] **other of their friends whom** [sic] **did not take part in their assault**.

10

In a review of the recovered [V]ideo[,] it appears that [E.T. and A.N.R.] may [] have [had] a verbal dispute by their actions. [A.N.R.] stay[ed] outside as [E.T.] enter[ed] the steak shop [sat] down and then [went] back outside to her. [D.B.] and witnesses state that while [E.T.] was inside [A.N.R.] interjected herself in their conversation and appeared drunk. They attempted to ignore her with [D.B.] asking her to stop. [A.N.R.] ignored the request and continued her behavior. When [E.T.] exited the store [A.N.R.] [] stated to him[:] "This [g]uy is being a dick to me and starting shit[.]" [E.T.] [] approached [D.B.] nose to nose wanting to fight and is seen on the camera pushing [D.B.] with [two] hands knocking him back. [D.B.] [] beg[a]n to take a fighter[']s stance but wave[d] [E.T.] off telling him he d[id]n't want to fight. [E.T. and A.N.R.] walk[ed] back to Steve's [S]teaks and it appears that [E.T.] [] attempt[ed] to get [A.N.R.] to go inside but [A.N.R.] stop[ped] and mouth[ed] what appears to be "FUCK YOU" as she turn[ed] back towards [D.B.] and his friends while giving them the middle finger with both of her hands. It should be noted that [A.N.R.] look[ed] angry and at no point do you see any tears.

The [V]ideo now shows [D.B.] and his friends/witnesses leaving the area with the [two] witnesses walking towards the rear of the parking lot to retrieve their car and [D.B.] following on his motorcycle.

Inside of Steve's Steaks shows the offenders now engage[d] in conversation with [E.T.] [E.T.] then [went] outside looking towards the area where [D.B.] was parked and then turn[ed] seeing [D.B.] now on the other side of [the] building as he had to go around it to exit after following his friends/witnesses. [E.T.] [] exit[ed] the store and beg[an] to run towards [D.B.] and as [D.B.] turn[ed] onto west bound Comly R[oad] [E.T.] change[d] direction to cut off [D.B.] with [A.G.] following. The [V]ideo does not capture the initial assault but from witness interviews [of] E.K. [and] R.S.[,] *the* [*defendants*] cut the path of the motorcycle off and beg[a]n hitting him while he [wa]s attempting to leave. [D.B.] [] turn[ed] around and pull[ed] the bike over in front of 2751 Comly [Road] and [wa]s immediately attacked again by *all of the male def*[*endants*] who also came out of the steak shop. The [V]ideo shows *the group* hitting [D.B.] knocking him down and dragging

11

him back towards Comly [Road] while they continued to beat and kick him. Recovered in that area was the black bandana with white skulls that [D.B.] had been wearing. At one point during the attack [D.B.] [] pull[ed] his weapon telling the offenders to stay back but one of the group yelled that it was a [BB] gun. [A.N.R.] was heard antagonizing the crowd asking if they were going to let him get away with treating her like that. **[D.B.'s] motorcycle was knocked over by the offenders with [A.N.R.] and [Appellee] along with others kicking and vandalizing the bike**.

After the second beating[,] [D.B.'s] friends were able to pull him into their car and they watched the vandalism taking place and described [D.B.'s] injuries as severe with his one eye swollen almost shut. At th[at] time [A.G.] [] urinate[d] on the motorcycle. [D.B.] [] exited the vehicle asking[,] 'why are you doing this' and was [] attacked a third time with [A.G.] chasing [D.B.] who is backing up the whole time – [A.G.] takes his shirt off at one point and continues to chase [D.B.] who is backing away and already bleeding from his injuries. The other [defendants] also again join in surrounding [D.B.] and at this point on the [V]ideo as he is backing away – while telling them to stop[,] he [] fire[d] one time at [A.G.] striking him in the left eye area. . . . [D.B.] is now beat again with [M.M.] hitting [**D.B**.] **knocking** him **down** and [**Appellee**] and [G.U.] **now hitting** [**D.B**.] again. **The video shows [Appellee] pick up [D.B.'s] firearm [and] appear[] to rack it and then stand over [D.B.] pointing it point blank at [D.B.] then toss the firearm down**. [**Appellee**] **then continues to viciously beat [D.B.] even after he is unconscious. The firearm when recovered had a double feed which prevented it from being fired**.

[D.B.] was hospitalized for several days at Aria Torresdale Hospital in I.C.U. with numerous facial fractures[, a] broken right hand and lacerated liver.

The approx[imate] damage to [D.B.'s] 2003 Harley Davidson . . . is estimated at $1[,]000.00.

At the time of the incident the listed offenders gave police and investigating detective[]s statements as witnesses to the report that was made listing [A.G.] as the

12

complainant[,] which [did] not concur with independent witness statements and all of the recovered evidence.

This affidavit will be used for multiple offenders.

R.R. at 135a-136a (bold and italic emphasis added). The Affidavit of Probable Cause is supported by Appellee's Statement and the Video.

Appellant testified that the portions of the Affidavit of Probable Cause that reference *all defendants* did not include Appellee. Based on this testimony, *inter alia*, the trial court determined that there was not sufficient competent evidence to sustain the finding of probable cause. Specifically, the trial court reasoned:

> In reviewing the filings of the parties, the evidence presented during the trial, and the evidence, th[e trial c]ourt found that there was a genuine dispute of fact as to whether probable cause existed to initiate criminal proceedings against [Appellee]. [Appellant] swore out one Affidavit of Probable Cause for multiple persons and, in this instance, [Appellee], was implicated in behavior that he did not commit. As was demonstrated in the [V]ideo[], [D.B.'s] statement, and [Appellee's] statement, and witness statements, [**Appellee**] **was not a participant in *most of the activity* that led to** [**D**.**B**.] **being injured**. The Affidavit of Probable Cause *could be read* to imply that [Appellee] was a primary participant in the assaults against [D.B.] in a manner that was not consistent with the evidence.

Trial Ct. Op. at 19 (bold and italic emphasis added).

However, the issue before the trial court was whether the proceedings against Appellee were instituted with malice and without probable cause that Appellee assaulted D.B., had possession of a firearm, had possession of an instrument of a crime, recklessly endangered another person, and criminal mischief, not whether there was probable cause to believe that Appellee was a **primary participant** in the assault against D.B. In other words, did Appellant have probable cause to believe that Appellee was guilty of the crimes charged.

13

Here, there was **<u>no material dispute of fact surrounding the circumstances giving rise to probable cause for Appellee's criminal prosecution</u>** for aggravated assault and related offenses, as the Video distinctly showed Appellee, among other things, viciously beat D.B. while he was on the ground and being punched by other people. The undisputed Video that Appellant reviewed clearly showed Appellee viciously beating D.B., picking up D.B.'s gun, cocking it, and tossing it aside before resuming pummeling D.B. Corroborating the Video is **Appellee** himself who **freely admitted** that **<u>he</u> punched D.B**. "**as hard and as fast as [he] could** until the police got there," that **<u>he</u>** "**picked the gun up** and then threw the gun back down," and that **<u>he</u>** "**tried to rip the license plate off**" D.B.'s motorcycle. R.R. at 138a (emphasis added). Consequently, "an ordinary prudent person [viewing the Video and reading Appellee's Statement] could believe [Appellee] is guilty of [aggravated assault, simple assault, had possession of a firearm, had possession of an instrument of a crime, recklessly endangered another person, criminal mischief, and the other charged offenses]." *York*, 298 A.3d at 542 (quoting *La Frankie*, 618 A.2d at 1148).

Giving the non-moving party, Appellee herein, "the benefit of all favorable evidence along with all reasonable factual inferences arising from that evidence, [and] resolving any conflict in the evidence in favor of the non[]moving party," <u>Appellee did not meet his burden</u> of proving that Appellant instituted proceedings against him without probable cause. *Daddona*, 891 A.2d at 816. Thus, the trial court erred by not granting Appellant's motion for "compulsory non[]suit" where "the facts and circumstances lead to only one conclusion - the absence of liability." *Id*. Accordingly, because the trial court erred by denying Appellant's

Motion for Compulsory Nonsuit, the trial court erred by denying Judgment NOV in favor of Appellant.[20]

For all of the above reasons, the trial court's order is reversed, and the matter is remanded to the trial court to enter judgment in favor of Appellant.

---

[20] Based on this Court's disposition of the first issue, Appellant's remaining issue is moot.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Joseph Toner | : | |
| | : | |
| v. | : | |
| | : | |
| Detective James Severa, | : | No. 972 C.D. 2024 |
| Appellant | : | |

PER CURIAM

### O R D E R

AND NOW, this 18th day of November, 2025, the Philadelphia County Common Pleas Court's June 21, 2024 judgment on the verdict in favor of Joseph Toner and against Detective James Severa (Appellant) in the amount of $400,000.00 is REVERSED. The matter is REMANDED to the Philadelphia County Common Pleas Court to enter judgment in favor of Appellant.

Jurisdiction is relinquished.